592 S.E.2d 794

**Frederick J. WILLIAMS, Plaintiff Below, Appellant,**

v.

**CHARLESTON AREA MEDICAL CENTER, INC., a West Virginia Corporation, Defendant Below, Appellee.**

No. 31227.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2003.

Decided Oct. 10, 2003.

Concurring Opinion of Chief Justice Starcher Dec. 12, 2003.

Starcher, C.J., concurred in separate opinion.

Roger D. Forman, Forman & Crane, L.C., Ellen F. Golden, Golden Law Office, PLLC, Charleston, West Virginia, Attorneys for the Appellant.

Stephen A. Weber, Jill D. Sinatra, Kay Casto & Chaney PLLC, Charleston, West Virginia, Attorneys for the Appellee.

DAVIS, Justice:

Frederick Williams, who is an individual with a disability, appeals a verdict in favor of his employer, Charleston Area Medical Center, in his action claiming failure to accommodate under the West Virginia Human Rights Act. At trial, the jury found that climbing a ladder and working overhead were essential functions of the job held by Mr. Williams prior to his disability. Because we find that an employer may not be required to eliminate an essential function of a job as a means of accommodation, and the evidence was undisputed that Mr. Williams was unable to perform these essential functions of the job in question, we affirm the judgment in favor of the employer.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Frederick J. Williams (hereinafter "Mr. Williams"), plaintiff below and appellant herein, is a licensed plumber who was hired by Charleston Area Medical Center (hereinafter "CAMC"), defendant below and appellee herein, as a Maintenance Mechanic II in 1980. Mr. Williams remained employed as a Maintenance Mechanic II for CAMC until 1997. In 1996, Mr. Williams began experiencing health problems that caused him to frequently be absent from work. In 1997, Mr. Williams was diagnosed with Graves' Disease.[1] On April 10, 1997, he presented CAMC with a release from his doctor stating that he was "not allowed to climb on ladders or be above his [height]." Mr. Williams was referred by CAMC to Dr. Ranadive at CAMC Employee Health. Dr. Ranadive concurred with the restrictions placed on Mr. Williams, and referred him to long-term disability. When Mr. Williams' supervisor, Steve Nelson, learned about the restrictions placed upon Mr. Williams, Mr. Nelson concluded that Mr. Williams could not perform his job as a Maintenance Mechanic II if he was unable to work on a ladder or work overhead.

On June 30, 1998, Mr. Williams' lawyer wrote a letter to CAMC requesting that Mr. Williams be returned to work as a Maintenance Mechanic II, with the accommodations that he not be required to climb ladders or look up. CAMC apparently did not respond to this, or a subsequent similar request. In June, 1999, Mr. Williams long-term disability expired. Under CAMC policy, Mr. Williams had 30 days from the termination of his long-term disability within which to secure a position with CAMC or else be terminated as a CAMC employee. By letter dated June 7, 1999, CAMC notified Mr. Williams that his long-term disability benefits had been terminated, effective June 11, 1999, and requested that he contact CAMC to discuss his employment options if he planned to return to work at CAMC within thirty days. By letter dated June 29, 1999, Mr. Williams' lawyer informed CAMC that Mr. Williams desired to return to his job of Maintenance Mechanic II, and asked CAMC to make accommodations for his disability so that he would be able to return to his former post. After extending the thirty day period for Mr. Williams' return to work on two occasions, CAMC ultimately placed Mr. Williams into a lower paying position of Central Supply Technician.

On May 5, 1999, Mr. Williams filed suit against CAMC alleging disability discrimination. Mr. Williams claimed that CAMC failed to give him any accommodation for his disability and also failed to follow its own policies as to accommodations for disabled employees. A jury trial was had. After the

---

1. Graves' disease has been defined as "a disorder of excess thyroid hormone production. It is usually linked to an enlarged thyroid gland and bulging eyes (ex-ophthalmos)." *The Mosby Medical Encyclopedia* 352 (Revised ed.1992).

close of the evidence and the jury instructions, the jury retired with a special verdict form that was provided over Mr. Williams' objection.

■ The jury concluded that Mr. Williams was a qualified person with a disability, however, the jury also found that climbing a ladder and working overhead were essential functions of the Maintenance Mechanic II position. Therefore, judgment was entered on behalf of CAMC. Mr. Williams then filed a "MOTION FOR NEW TRIAL AND/OR TO AMEND VERDICT PURSUANT TO RULE 59(a) and (e) WEST VIRGINIA RULES OF CIVIL PROCEDURE." In his motion, Mr. Williams complained that the jury's verdict was "inconsistent and/or contrary to law." By order entered May 22, 2002, the Circuit Court of Kanawha County denied Mr. Williams' motion. The circuit court concluded that the special verdict form was not inconsistent in light of the criteria articulated in *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996).[2] It is from the May 22, 2002, order of the Circuit Court of Kanawha County that Mr. Williams now appeals.

## II.

## STANDARD OF REVIEW

In the instant case, Mr. Williams appeals from the circuit court's order denying his motion to award a new trial.

■ With regard to our standard for reviewing a circuit court's ruling on a motion for a new trial, we have explained that

> [a]s a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994). . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). We have also explained that,

> "[a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence."

*Andrews v. Reynolds Mem'l Hosp., Inc.*, 201 W.Va. 624, 630, 499 S.E.2d 846, 852 (1997) (quoting Syl. pt. 4, *Sanders v. Georgia–Pac. Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976) (additional citations omitted)).[3]

2. In syllabus point 2 of *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561 (1996), the Court held:

> To state a claim for breach of the duty of reasonable accommodation under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff must alleged the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.

3. Mr. Williams' motion also requested the circuit court to alter or amend the judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. Since the trial below was by jury, this was not a proper request. We have held that

> "[u]pon a motion to alter or amend a judgment under Rule 59(e)[, the trial court] may not enter a new judgment in an action in which there has been a trial by jury[.]" Syl. Pt. 4, in part, *Investors Loan Corp. v. Long*, 152 W.Va. 673, 166 S.E.2d 113 (1969).

Syl. pt. 1, *McDaniel v. Kleiss*, 198 W.Va. 282, 480 S.E.2d 170 (1996). *See also* Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, *Litigation Handbook on West Virginia Rules of Civil Procedure* 974–75 (2002) (discussing Rule 59(e) and stating "Rule 59(e) may be used by a party who seeks to change or revise a judgment entered as a result of a motion to dismiss or a motion for summary judgment," and also stating "Rule 59(e) may be invoked to alter or amend a judgment in a bench trial. However, it has been held by the Supreme Court that upon a motion to alter or amend a judgment under Rule 59(e), a

With due consideration for the foregoing standards, we proceed to the substantive issue before us.

## III.

### DISCUSSION

██ Mr. Williams' appeal is based upon his challenge to the special verdict form used by the circuit court in this case. "As a general rule, a trial court has considerable discretion in determining whether to give special verdicts and interrogatories to a jury unless it is mandated to do so by statute." Syl. pt. 8, *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995). Thus, the circuit court's determination regarding a special verdict form will be reversed only for an abuse of discretion.

In this Court's view, the criterion for determining whether the discretion is abused is whether the verdict form, together with any instruction relating to it, allows the jury to render a verdict on the issues framed consistent with the law, with the evidence, and with the jury's own convictions. *See* 9A Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 2508 (1995); *Martin v. Gulf States Utilities Co.*, 344 F.2d 34 (5th Cir.1965); and *McDonnell v. Timmerman*, 269 F.2d 54 (8th Cir.1959).

*Adkins v. Foster*, 195 W.Va. 566, 572, 466 S.E.2d 417, 423 (1995) (per curiam).

Mr. Williams asserts that the circuit court abused it's discretion in allowing the special verdict form to go to the jury, because it conflicted with the instructions provided to the jury, did not include all the elements of a claim for failure to accommodate, and was contrary to the law and regulations regarding disability discrimination and reasonable accommodation.[4] We disagree. We find that this appeal can be resolved by answering one simple question of law. Must an employer provide an accommodation for an essential function of a job?

██ Pursuant to the West Virginia Human Rights Act,

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:

(1) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment *if the individual is able and competent to perform the services required even if such individual is blind or disabled . . . .*

W. Va.Code § 5–11–9(1) (1998) (Repl.Vol. 2002) (emphasis added). Thus, the Human Rights Act itself recognizes that a blind or disabled person must be "able and competent to perform the services required." This Court explained what is meant by "able and competent" in *Ranger Fuel Corp. v. West Virginia Human Rights Commission*, wherein we stated that "[t]he 'able and competent' requirement means that an employer has the right not to hire or to fire employees who are unable to perform a job because either they are generally unqualified or they have a handicap that impedes job performance, subject to the *'reasonable accommodation'* requirement." 180 W.Va. 260, 265, 376 S.E.2d 154, 159 (1988) (emphasis added) (footnote omitted).

trial court may not enter a new judgment in an action in which there has been a trial by jury. A new judgment entered by the trial court in an action in which there has been a trial by jury will be set aside on appeal." (footnotes omitted)). To obtain the type of relief he sought from the circuit court, Mr. Williams should have filed a motion for judgment as a matter of law under Rule 50 of the West Virginia Rules of Civil Procedure.

4. CAMC has asserted that Mr. Williams waived his objection to the verdict form. CAMC contends that the objection Mr. Williams raised at trial is not the same objection argued to this Court and, therefore, the circuit court never had the opportunity to address in the first instance the issues now raised by Mr. Williams on appeal. On the contrary, the arguments raised by Mr. Williams' in his "MOTION FOR NEW TRIAL AND/OR TO AMEND VERDICT" are the same as the arguments he now presents to this Court. Consequently, the circuit court did have the opportunity to address the errors Mr. Williams raises to this Court and CAMC's assertion that Mr. Williams has waived any objection to the verdict form is without merit.

The "reasonable accommodation" requirement referred to in *Ranger Fuel* is set out in the legislative regulations promulgated by the Human Rights Commission to "interpret and implement the provisions of the West Virginia Human Rights Act." 6B C.S.R. § 77–1–1.1 (1994). Specifically, the regulations state: "[a]n employer shall make reasonable accommodation to the known physical or mental impairments of qualified individuals with disabilities where necessary *to enable a qualified individual with a disability to perform the essential functions of the job....*" 6B C.S.R. § 77–1–4.5 (1994) (emphasis added). Thus, it appears from the plain language of the foregoing regulation that the purpose of requiring reasonable accommodation is to enable a disabled individual to perform the essential functions of the job in question. Indeed, the regulations go on to state

[e]ach individual's ability to perform a particular job must be assessed on an individual basis. An employer may refuse to hire or may discharge a qualified individual with a disability, even after reasonable accommodation, if the individual is unable to perform the essential functions of the job without creating a substantial hazard to his or her health and safety or the health and safety of others. However, any such decision shall be used upon the individual's actual abilities, and not upon general assumptions or stereotypes about persons with particular mental or physical disabilities.

6B C.S.R. § 77–1–4.7 (1994). Similarly, this Court has recognized that "reasonable accommodation" is intended to allow a disabled individual "to fully perform the job's essential functions":

Under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), reasonable accommodation means reasonable modifications or adjustments to be determined on a case-by-case basis which are designed as attempts to enable an individual with a disability to be hired or to remain in the position for which he or she was hired. The Human Rights Act does not necessarily require an employer to offer the precise accommodation an employee requests, at least so long as the employer offers some other accommodation *that permits the employee to fully perform the job's essential functions.*

Syl. pt. 1, *Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 479 S.E.2d 561 (emphasis added).

Logically, then, if reasonable accommodation is for the purpose of enabling a disabled individual to *perform* the essential functions of a job, an employer may not be required to eliminate an essential function of a job as a means of fulfilling its duty to provide reasonable accommodation. Though up to now we have not announced it has a holding, this concept has previously been recognized by this Court. In footnote 9 of *Skaggs,* we observed that "[t]he duty to accommodate does not require employers to retain employees who cannot fulfill the essential functions of the job. The law protects only 'qualified' individuals with disabilities who, with or without reasonable accommodation, can perform the essential nature of the job." 198 W.Va. at 65, 479 S.E.2d at 575 (citing *Ranger Fuel* ). *See also Coffman v. West Virginia Bd. of Regents,* 182 W.Va. 73, 76 n. 10, 386 S.E.2d 1, 4 n. 10 (1988) ("the uncontradicted testimony and medical evidence established conclusively that Coffman could not perform the essential lifting and bending requirements of her job. We therefore find that as a matter of law Coffman, even with reasonable accommodation, was unable to perform the duties of the job for which she was hired and the appellants were not required to retain her in that position."), *overruled on other grounds by Skaggs.*[5] *Cf.* Syl. pt. 6, in part, *Hosaflook v. Consolidation Coal Co.,* 201 W.Va. 325, 497 S.E.2d 174 (1997) ("An individual who can no longer perform the essential functions of a job either with or without reasonable accommoda-

---

**5.** Although an employer may not be required to retain an employee in a position in which the employee, with or without accommodation, is unable to fully perform the essential functions, this does not mean the employer may summarily discharge the employee without considering the employee for other positions within the employer's company. *See* Syl. pt. 4, *Skaggs* ("Under the West Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), once an employee requests reasonable accommodation, an employer must assess the extent of an employee's disability and how it can be accommodated. If the employee cannot be accommodated in his or her current position,

tion and, thus, who is receiving benefits under a salary continuance plan which does not provide otherwise, is not performing the essential functions of a job by being a benefit recipient. . . .").

In a similar context, other courts have reached the same conclusion with regard to the Americans with Disabilities Act.[6] *See Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir.2003) (commenting that "[a] reasonable accommodation can never involve the elimination of an essential function of a job.") (citation omitted); *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 709–10 (8th Cir.2002) (" 'While job restructuring is a possible accommodation under the ADA, this court has held that an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee' " (quoting *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir.1999))); *Mathews v. The Denver Post*, 263 F.3d 1164, 1168–69 (10th Cir.2001) ("The idea of accommodation is to enable an employee to perform the essential functions of his job; an employer is not required to accommodate a disabled worker by modifying or eliminating an essential function of the job.").

Based upon the prior acknowledgments of this Court, and the foregoing authority, we now expressly hold that an employer's duty to accommodate an individual with a disability under the West Virginia Human Rights Act, W. Va.Code § 5–11–1 *et seq.*, does not require the employer to eliminate an essential function of a job.

In the case *sub judice*, it was undisputed that Mr. Williams was not able to climb a ladder or work above his head. The only accommodation he sought was to have these functions eliminated from his duties as a Maintenance Mechanic II. The special verdict form asked the jury "[d]o you find, from a preponderance of the evidence, that climbing a ladder and working over your head are essential functions of the Maintenance Mechanic II position?" The jury concluded that climbing a ladder and working over head were essential functions of the Maintenance Mechanic II position. Once the jury made this determination, there was no need for their inquiry to proceed further. *See, e.g., Davidson v. America Online, Inc.*, 337 F.3d 1179, 1192 (10th Cir.2003) ("We note that should a jury decide that voicephone experience is an essential function, the inquiry ends there, because the reasonable accommodation requested by Davidson is to eliminate that essential function, which an employer is not required to do.") (citations omitted).[7] Consequently, we find that the circuit court did not abuse its discretion in submitting the special verdict form to the jury, and further committed no error in denying Mr. Williams' motion for a new trial.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, the May 22, 2002, order of the Circuit Court of Kanawha County is affirmed.

Affirmed.

Chief Justice STARCHER concurs and reserves the right to file a concurring opinion.

---

however it is restructured, then the employer must inform the employee of potential job opportunities within the company and, if requested, consider transferring the employee to fill the open position. To the extent that *Coffman v. West Virginia Board of Regents*, 182 W.Va. 73, 386 S.E.2d 1 (1988), is inconsistent with the foregoing, it is expressly overruled.").

6. We have recognized that decisions interpreting the ADA are useful in interpreting our Human Rights Act. *See Hosaflook v. Consolidation Coal Co.*, 201 W.Va. 325, 332, n. 10, 497 S.E.2d 174, 181 n. 10 (1997) ("[C]ases decided under the ADA are also helpful in deciding our cases under the West Virginia Human Rights Act"). *Cf. Skaggs v. Elk Run Coal Co.* 198 W.Va. 51, 68, 479

S.E.2d 561, 578 ( noting that "the Legislature amended the Human Rights Act to define disability to bring the law into line with the federal authorities.").

7. As previously noted, Mr. Williams has also complained that the verdict form was inconsistent with the law and conflicted with the instructions provided to the jury. We have reviewed the verdict form and find that the questions contained therein included the elements of *Skaggs v. Elk Run Coal Co.*, 198 W.Va. 51, 479 S.E.2d 561, that were material to this case. Furthermore, we have thoroughly reviewed the instructions given to the jury in connection with the questions included on the verdict form and find no conflict.

STARCHER, Chief Justice, concurring:

(Filed Dec. 12, 2003)

In the instant case, a jury concluded that climbing a ladder and working overhead were essential functions of the Maintenance Mechanic II position. This conclusion is supported by the record, and dispositive of the argument asserted by appellant Frederick Williams, that the appellee hospital should have eliminated those tasks from Mr. Williams' duties.

I write separately to suggest that the jury instructions and the verdict form used by the circuit court were, when fully parsed out, somewhat contradictory. The jury found, through the first question on the verdict form, that Mr. Williams was a "qualified person with a disability." The jury instructions defined a "qualified person with a disability" as a person who, among other things, was able "with reasonable accommodation, to perform the essential functions of his job."

The jury then found, through the second question on the verdict form, that "climbing a ladder and working over your head," actions that Mr. Williams could not perform, were "essential functions of the Maintenance Mechanic II position."

The findings of the jury through these two questions therefore appear to be conflicting. On the one hand, in the first question the jury answered that Mr. Williams, although disabled, was able to perform the essential functions of his job. On the other hand, in the second question the jury answered that Mr. Williams was *not* able to perform the essential functions of his job.

The jury instructions and the jury verdict form that the circuit court used in this case are, therefore, a classic example of what happens when a court mushes together instructions and forms provided by attorneys for the parties—the result is often confusion, with facts and law muddled by attorney advocacy.[1]

That being said, however, I believe the evidence supports the jury's ultimate conclusion and the circuit court's judgment order. Mr. Williams was disabled by his medical condition, and as a result was unable to perform an essential part of his job. His employer had no responsibility to eliminate a substantial portion of his job duties as an accommodation for his disability.

I therefore respectfully concur with the majority's opinion.

---

1. The definition of "qualified person with a disability" in this case appears to have been taken directly from the Code of State Regulations. *See* 6B C.S.R. §§ 77.1–4.2, 4.3, 4.4 and 4.5. However, the source of the jury verdict form is unclear. In the future, in similar cases courts should endeavor to formulate jury verdict forms that use the questions posed in Syllabus Point 2 of *Skaggs v. Elk Run Coal Co.,* 198 W.Va. 51, 479 S.E.2d 561 (1996), which states:

> To state a claim for breach of the duty of reasonable accommodation under the West

Virginia Human Rights Act, W. Va.Code, 5–11–9 (1992), a plaintiff must allege the following elements: (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.