IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2016 Term

_____

No. 15-0553

_____

**FILED**

**May 19, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WANDA WILLIAMS, individually and on behalf of the Estate
and Wrongful Death Beneficiaries of ROBERT THOMPSON,
Plaintiff Below, Petitioner

v.

CMO MANAGEMENT, LLC, (as to Nicholas County
Nursing & Rehabilitation),
Defendant Below, Respondent

_____

Appeal from the Circuit Court of Nicholas County
Honorable Gary L. Johnson
Civil Action No. 13-C-92

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED

_____

Submitted: April 27, 2016
Filed: May 19, 2016

James B. McHugh, Esq.
Michael J. Fuller, Jr., Esq.
D. Bryant Chaffin, Esq.
Amy J. Quezon, Esq.
A. Lance Reins, Esq.
McHugh Fuller Law Group, PLLC
Hattiesburg. Mississippi
Counsel for Petitioner

Jeffrey M. Wakefield., Esq.
Mark A. Robinson, Esq.
Ryan A. Brown, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Counsel for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

JUSTICE DAVIS, deeming herself disqualified, did not participate in the decision in this case.
JUDGE ALSOP sitting by special assignment.

SYLLABUS

1. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 4, *Sanders v. Georgia-Pac. Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976).

2. An individual with a medical power of attorney does not have the power to make binding legal decisions for the subject incapacitated person.

3. "The statute of limitations for a personal injury claim brought under the authority of W.Va. Code § 55-7-8a(c) (1959) (Repl. Vol. 2008) is tolled during the period of a mental disability as defined by W.Va. Code § 55-2-15 (1923) (Repl. Vol. 2008). In the event the injured person dies before the mental disability ends, the statute of limitations begins to run on the date of the injured person's death." Syl. Pt. 5, *Mack-Evans v. Hilltop Healthcare Center, Inc.*, 226 W.Va. 257, 700 S.E.2d 317 (2010).

4. The authority of a personal representative to bring a personal injury action on behalf of a deceased individual pursuant to West Virginia Code § 55-7-8a(c) (2008) includes the authority to bring a medical malpractice action under the Medical Professional Liability Act, West Virginia Code §§ 55-7B-1 to -12 (2008 & Supp. 2015), for injuries sustained prior to death that did not result in death. Because West Virginia Code § 55-7-8a(c) incorporates the general disability savings statute, West Virginia Code § 55-2-15 (2008), the tolling provisions of the general disability savings statute apply to a medical malpractice cause of action brought by a personal representative under authority of West Virginia Code § 55-7-8a.

LOUGHRY, Justice:

The petitioner and plaintiff below, Wanda Williams, individually and on behalf of the estate and wrongful death beneficiaries of Robert Thompson, appeals from the May 11, 2015, order of the Circuit Court of Nicholas County denying her motion for a new trial following a plaintiff's verdict in a case involving allegations of negligent medical care and wrongful death instituted against the respondent, CMO Management, LLC ("CMO"). As grounds for her appeal, the petitioner asserts the trial court erred by applying the two-year limitations period in a manner that prevented her from introducing pertinent evidence of Mr. Thompson's injuries, which he allegedly sustained while residing at Nicholas County Nursing & Rehabilitation ("nursing facility").[1] The trial court further erred, according to the petitioner, in failing to apply the discovery rule and the tolling provisions of the general disability savings statute ("savings statute")[2] and in making several evidentiary rulings. Upon our careful review of the law against the record in this case, we conclude that the trial court committed error in its application of the statute of limitations for evidentiary purposes to the petitioner's personal injury claim. Based on the petitioner's concession during oral argument that a remand limited to the personal injury claim is proper given the assignments of error, we find it unnecessary to review the denial of a new trial as to the wrongful death

---

[1]The subject nursing facility is managed by CMO.

[2]*See* W.Va. Code § 55-2-15 (2008) (providing for extended claim filing periods for minors or individuals suffering from mental infirmities).

1

claim. Accordingly, we affirm the decision not to grant a new trial as to the wrongful death claim; reverse the decision not to grant a new trial as to the personal injury claim; and remand this matter for a new trial solely on the personal injury claim.

## I. Factual and Procedural Background

Mr. Thompson, who suffered from Alzheimer's disease, resided at the nursing facility from June 14, 2001, to June 27, 2011. Following his death on July 2, 2011, the petitioner filed suit against CMO on June 19, 2013, alleging, *inter alia*, that Mr. Thompson's injuries and death resulted from the abuse and neglect he suffered while a resident at the nursing facility.[3] The petitioner also sought damages in connection with systemic problems at the nursing facility concerning staffing, budgeting and allocation of resources, and inappropriate policies and procedures. She sought to recover for Mr. Thompson's injuries from 2009 until his death.[4] The parties stipulated below that Mr. Thompson was mentally incompetent during all times relevant to the petitioner's cause of action.

---

[3]Included among the various causes of action alleged in the complaint were corporate negligence, negligence, gross negligence, willful, wanton, reckless, malicious and/or intentional conduct, violations of the West Virginia Nursing Home Act (W.Va. Code § 16-5C-15), medical malpractice for both lethal and non-lethal injuries, fraud, breach of fiduciary duty, premises liability, and violations of the West Virginia Consumer Credit and Protection Act (W.Va. Code §§ 46A-6-101 to -110).

[4]At trial, the petitioner introduced evidence of injuries that included falls, subdural hematoma, hip fracture, malnutrition, personal dignity violations, and extreme pain.

On September 12, 2014, CMO filed a "Motion for Summary Judgment for Failure to Meet the Applicable Statute of Limitations Regarding Claims Accrued Prior to April 19, 2011." Arguing that the Medical Professional Liability Act ("MPLA")[5] applied to all of the petitioner's claims, CMO asserted that the two-year limitations period for MPLA claims[6] barred any claims that accrued prior to April 19, 2011.[7] Responding to the summary judgment motion, the petitioner argued that not all of her claims fell under the MPLA based on this Court's decision in *Manor Care, Inc. v. Douglas*, 234 W.Va. 57, 763 S.E.2d 73 (2014), which turned on the MPLA definitions of "health care" and "health care provider."[8] She argued that while some of her claims fell squarely within the MPLA, other claims, which did not involve medical care or treatment, fell outside the MPLA. In further support of her position, the petitioner raised the applicability of the discovery rule and the tolling provisions of the general disability savings statute.[9]

---

[5]*See* W.Va. Code §§ 55-7B-1 to -12 (2008 & Supp. 2015).

[6]*See* W.Va. Code § 55-7B-4.

[7]To arrive at this date, CMO started with the date the complaint was filed (June 19, 2013), subtracted two years (the limitations period for bringing an MPLA action), and then subtracted another sixty days due to the time allotted under the MPLA for filing a notice of claim and responding to same. *See* W.Va. Code § 55-7B-6(h).

[8]When the *Manor Care* decision was issued, and during all time periods relevant to this case, the definition of "health care" did not extend to staffing-related issues. In 2015, the Legislature amended West Virginia Code § 55-7B-2(e) to include matters related to staffing within the definition of "health care" under the MPLA. Those amendments have no impact on the outcome of this case.

[9]*See supra* note 2.

3

In ruling on the summary judgment motion based on the MPLA limitations period, the trial court relied upon a recent memorandum decision issued by this Court in *Martin v. Charleston Area Medical Center, Inc.*, No. 12-0710, 2013 WL 2157698 (W.Va. May 17, 2013). We determined in *Martin* that adults who allege a medical professional liability action under the MPLA have a two-year statute of limitations, except in cases where discovery is an issue. *Id.* at *2. The trial court found the reasoning of *Martin* instructive on the issue of whether the savings statute should toll the petitioner's claim. Citing the rule of statutory construction that a specific statute controls in comparison to a general statute, the trial court ruled that the MPLA's "more specific two-year statute of limitations" should apply in lieu of the generalized provisions of the savings statute.[10] In applying the two-year limitations period, the trial court decided that any claims arising from the care and treatment provided by the nursing facility prior to April 19, 2011, were time barred. Because Mr. Thompson died on July 2, 2011, the effect of this ruling was to limit the petitioner to introducing evidence of injuries that occurred during a two-and-a-half-month period (April 19, 2011, to July 2, 2011).

At the conclusion of trial, which began on October 21, 2014, the jury returned a verdict in favor of the petitioner. The jury responded to special interrogatories and found

---

[10]This Court observed in *Martin* that "[f]or most general causes of action, those under a disability have up to twenty years to file suit pursuant to West Virginia Code § 55-2-15." 2013 WL 2157698 at *2.

that CMO deviated from the standard of care in its treatment of Mr. Thompson. After assessing the negligence of CMO, the jury decided that 75% of the negligence was medical in nature and 25% was non-medical, as it pertained to inadequate staff and/or training. In awarding compensatory damages,[11] the jury determined that $10,000 was attributable to damages suffered by Mr. Thompson and $90,000 was suffered by the estate for his wrongful death.

In seeking a new trial,[12] the petitioner faulted the trial court for its refusal to apply the tolling provision found in the savings statute. Rather than relying on *Martin* as the basis for refusing to apply the savings statute, she posited that the trial court should have applied the holding in *Mack-Evans v. Hilltop Healthcare Center, Inc.*, 226 W.Va. 257, 700 S.E.2d 317 (2010), to this case.[13] She further argued that the trial court erred in failing to apply the discovery rule to toll the statute of limitations until Mr. Thompson's date of death

---

[11]The trial court granted CMO's motion to direct a verdict as to punitive damages after finding that the petitioner "failed to produce any evidence upon which a reasonable jury could base an award of punitive damages;" the petitioner has not appealed the issue of punitive damages.

[12]*See* W.Va. R. Civ. P. 59.

[13]In *Hilltop Healthcare*, this Court found the tolling provision of the savings statute applicable to a lawsuit instituted under West Virginia Code § 55-7-8a by the decedent's personal representative following the death of an incompetent individual. Because the parties stipulated that Mr. Thompson was mentally incapacitated due to having Alzheimer's, the petitioner maintains the tolling provisions of West Virginia Code § 55-7-8a should apply to her cause of action under authority of *Hilltop Healthcare*.

5

due to his incompetency and the absence of a legal representative charged to act on his behalf. The petitioner also challenged the trial court's decision to limit the introduction of specific demonstrative evidence and to admit other irrelevant testimonial evidence. Upon its consideration of these arguments, the trial court denied the petitioner's motion for a new trial by its order of May 11, 2015. It is from this denial that the petitioner now appeals.

## II. Standard of Review

As we explained in *Williams v. Charleston Area Medical Center, Inc.*, 215 W.Va. 15, 592 S.E.2d 794 (2003):

> 'As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. . . . Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.'

*Id.* at 18, 592 S.E.2d at 797 (quoting *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995) and internal citation omitted). The deference we accord a trial court in regard to a new trial ruling is not without limits:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

6

Syl. Pt. 4, *Sanders v. Georgia-Pac. Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). With these standards in mind, we proceed to determine whether the trial court erred in denying the petitioner's motion for a new trial.

## III. Discussion

The statute of limitations issue at the center of this appeal concerns the time period for which the trial court permitted evidence to be introduced related to personal injuries the petitioner alleges Mr. Thompson sustained while living at the nursing facility.[14] The crux of the petitioner's position is that, because Mr. Thompson's incapacity statutorily prevented the running of the two-year limitations period until the point of his death, she should have been permitted to introduce evidence for the two-year period preceding his death as opposed to the two-year period that anteceded the lawsuit's filing. She contends the trial court erred in deciding the savings statute did not toll the running of the applicable two-year limitations period until the date when Mr. Thompson died. In relying on *Martin* and refusing to apply the holding in *Hilltop Healthcare,*[15] the petitioner contends the trial court failed to appreciate critical distinctions between *Martin* and this case. Conversely, CMO maintains that the *Martin* decision is both apposite and controlling.

[14]There is no dispute that the applicable limitations period under the MPLA is two years and there is no issue regarding the petitioner's timely filing of her complaint.

[15]*See supra* note 13.

7

To address the issues in this appeal, we find it necessary to revisit this Court's decision in *Martin.* The only issue in that case was whether a lawsuit filed in 2012 could be maintained for medical injuries sustained by an incapacitated individual in 2007. Mr. Martin, who was legally and mentally incapacitated as the result of a work-related incident, developed numerous ulcers while hospitalized after the May 2007 accident. His wife was appointed as his guardian and conservator on February 26, 2008. When the circuit court granted the defendant hospital's motion to dismiss the complaint based on the passing of the MPLA two-year statute of limitations before the suit was filed, Mrs. Martin appealed. As the basis for her appeal, she raised the issue of whether the savings statute should operate to toll the statute of limitations based on Mr. Martin's mental incapacity.

Because Mrs. Martin was her husband's legal representative and because she was contemporaneously aware of his ulcers during his hospital stay, there was no issue as to the application of the discovery rule to the case.[16] *Martin*, 2013 WL 2157698 at *2, n.3; *see Legg v. Rashid*, 222 W.Va. 169, 174, 663 S.E.2d 623, 628 (2008) (stating that "'[U]nder the "discovery rule," the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim.'") (quoting Syl. Pt. 2, in part, *Gaither v. City*

---

[16]The MPLA expressly incorporates the discovery rule as it provides that a cause of action "must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs. . . ." W.Va. Code § 55-7B-4(a).

8

*Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997)). This Court was asked to decide whether the two-year MPLA statute ran in 2009, two years after the ulcers first formed, or whether a longer limitations period of up to twenty years should apply under the savings statute.[17] In considering whether the savings statute should toll the claim for Mr. Martin's injuries beyond the two-year statute of limitations provided by the MPLA, we determined that "adults alleging a medical professional liability action under [the] MPLA have a two-year statute of limitations, *except in cases where discovery is an issue*." *Martin*, 2013 WL 2157698 at *2 (emphasis supplied). Because the discovery of the subject injuries was not an issue in *Martin* and because Mr. Martin had an appointed legal representative, this Court determined that the two-year limitations period ran from the date the cause of action accrued in 2007. *Id.* Since the complaint was not filed within two years of the alleged injuries, we affirmed the circuit court's dismissal of the complaint for failing to meet the applicable statute of limitations.

Although the trial court and CMO both take the view that the instant case falls squarely within the holding of *Martin,* this case includes several issues that were not present in *Martin.* In contrast to *Martin*, the case before us presents a question of when Mr.

---

[17]Under the savings statute, the applicable statute of limitations is tolled until the injured individual either gains the age of majority or regains his/her mental competency. In no event, however, can such an action be brought more than twenty years after the accrual of the right to sue. *See* W.Va. Code § 55-2-15.

9

Thompson's injuries could have been legally discovered which is linked to yet another distinction–the absence of a legal representative appointed prior to Mr. Thompson's death. While Mr. Martin was still living when his medical malpractice suit was instituted on his behalf, Mr. Thompson's cause of action was only asserted after his death. The trial court overlooked these significant differences, limiting its analysis to our brief recognition in *Martin* of the rule of statutory construction which "'requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.'" *Id.* (quoting *Zimmerer v. Romano*, 223 W.Va. 769, 784, 679 S.E.2d 601, 616 (2009)). Though the legal analysis we employed in *Martin* was admittedly scant, the trial court mistakenly concluded that the limitations period issue presented in this case–one that clearly does not require a quantitative determination of two versus twenty years for purposes of instituting an MPLA lawsuit–was resolved by the ruling we issued in *Martin*.

Unlike the situation existing in *Martin*, the viability of pursuing a medical malpractice action was never in question here. The parties agreed that a two-year limitations period was controlling and that it had been met; the only issue was an identification of which two-year time period applied for purposes of introducing evidence of Mr. Thompson's alleged injuries. In contrast to *Martin* where there was no need to apply the discovery rule, this case involved an issue of when Mr. Thompson's injuries could reasonably have been

10

discovered.[18] While Mr. Martin's legal guardian was immediately aware of his ulcers, in the case before us, the lack of an appointed legal representative created an issue as to when Mr. Thompson's alleged injuries were subject to discovery. Given the material differences between *Martin* and the case *sub judice*, we do not find it determinative of the issues in this case.

Turning to the issue of when Mr. Thompson's injuries could have been discovered, CMO contends the medical power of attorney that the petitioner had with regard to Mr. Thompson is sufficient to charge her with knowledge of his injuries for purposes of a statute of limitations analysis. We disagree. As this Court discussed in *State ex rel. AMFM, LLC v. King*, 230 W.Va. 471, 740 S.E.2d 66 (2013), persons who hold a medical power of attorney or serve as a health care surrogate "have, as their sole function, the authority to make health care decisions on behalf of an incapacitated person." *Id.* at 481 n.9, 740 S.E.2d at 76 n.9. An individual with a medical power of attorney does not have the power to make binding legal decisions for the subject incapacitated person. *See Tex. Cityview Care Ctr., LP v. Fryer*, 227 S.W.3d 345, 352 (Tex. Ct. App. 2007) ("[N]othing in the medical power of attorney indicates that it was intended to confer authority . . . to make legal, as opposed to health care, decisions. . . ."); *accord Johnson v. Kindred Healthcare, Inc.*, 2 N.E.3d 849, 857 (Mass. 2014) ("Our conclusion that a health care agent does not have the authority to bind

---

[18]*See supra* note 16.

the principal to an arbitration agreement comports with the view of a majority of courts in other jurisdictions that have considered similar issues."); *Koricic v. Beverly Enters.–Neb., Inc.*, 773 N.W.2d 145, 151 (Neb. 2009) (finding that son's authority to sign health care documents on mother's behalf did not authorize him to sign arbitration agreement on her behalf); *Primmer v. Healthcare Indus. Corp.*, 43 N.E.3d 788, 793 (2015) (Ohio App. 2015) (holding that daughter's medical power of attorney did not authorize her to sign arbitration agreement on father's behalf, reasoning that "the terms of this health care power of attorney do not encompass decisions to waive trial by jury or the court in favor of arbitration"); *see also Blankfeld v. Richmond Health Care, Inc.*, 902 So.2d 296, 301 (Fla. App. 2005) ("There is nothing in the statute to indicate legislative intent that such a [health care] proxy can enter into contracts which agree to things not strictly related to health care decisions."); *cf. Owens v. Nat'l Health Corp.* 263 S.W.3d 876, 883-85 (Tenn. 2007) (applying statutory definitions to hold that health care power of attorney authorized attorney-in-fact to enter into arbitration agreement as part of contract admitting nursing home resident). As a result, the fact that the petitioner may have had concerns about the care Mr. Thompson was receiving in 2009 did not impose upon her a duty to institute a suit on his behalf based on that alleged knowledge. Until she was appointed as his legal representative following his death, the petitioner had no power to stand in Mr. Thompson's legal shoes. Because a medical power of attorney is not the equivalent of a general power of attorney, she cannot be charged with knowledge of his injuries for purposes of the statute of limitations.

Given that Mr. Thompson was incompetent and had no legal representative who could have initiated an MPLA action on his behalf, the petitioner argues the statute of limitations could not have begun to run until his death. In support of her position, she cites this Court's decision in *Hilltop Healthcare,* a case in which we considered whether the savings statute applied to personal injury claims brought by a personal representative, under authority of West Virginia Code § 55-7-8a(c),[19] upon the death of a person with a mental disability. In examining the language of West Virginia Code § 55-7-8a(c), we recognized that the savings statute is directly involved in deciding whether a personal representative may bring suit following death.[20] As a result, we determined that "the statute [W.Va. Code § 55-7-8a(c)] is impacted by the mental disability tolling provisions under W.Va. Code § 55-2-15." 226 W.Va. at 259, 700 S.E.2d at 319. Based on this recognition, we held in syllabus point five of *Hilltop Healthcare:*

> The statute of limitations for a personal injury claim brought under the authority of W.Va. Code § 55-7-8a(c) (1959) (Repl. Vol. 2008) is tolled during the period of a mental disability as defined by W.Va. Code § 55-2-15 (1923) (Repl.

---

[19]A personal representative is authorized to bring a cause of action that survives a person's death"[i]f the injured party dies before having begun any such action and it is not at the time of his death barred by the applicable statute of limitations." W.Va. Code § 55-7-8a(c). A personal injury is among those causes that survive death under the statute. *See* W.Va. Code § 55-7-8a(a).

[20]The determination of whether a personal representative can bring an action upon death is statutorily dependent on the limitation periods set forth in "articles two [§§ 55-2-1 et seq.] and two-A [§§ 55-2A-1 et seq.] of this chapter." W.Va. Code § 55-7-8a(c).

13

Vol. 2008). In the event the injured person dies before the mental disability ends, the statute of limitations begins to run on the date of the injured person's death.

226 W.Va. at 259, 700 S.E.2d at 319.

Logic impels the conclusion that an incompetent individual's death is a natural moratorium for the tolling of the statute of limitations that was invoked due to a disability. *See Roberson v. Teel*, 513 P.2d 977, 988 (Ariz. App. 1973) (stating that "where a statute of limitation is tolled because of incompetency, the tolling of the statute ends upon the death of the incompetent"). In *Martin*, there was no need to consider how the death of an incompetent person terminates the statutory tolling of the applicable statute of limitations because Mr. Martin was still living when the lawsuit was initiated. *See* W.Va. Code § 55-2-15. To the extent that our ruling in *Martin* may have permitted an inference that the tolling provisions of West Virginia Code § 55-2-15 do not come into play in regard to a medical malpractice claim posthumously initiated on behalf of an incompetent person, we expressly disavow that conclusion. As we previously recognized in *Hilltop Healthcare*, a published opinion,[21] the statutory authority for a personal representative to bring an action following the death of an individual is examined with specific reference to the tolling provisions provided under the

---

[21]*See State v. McKinley*, 234 W.Va. 143, 153, 764 S.E.2d 303, 313 (2014) (stating that signed opinions "should be the primary sources relied upon in the development of the common law").

14

savings statute. 226 W.Va. at 266, 700 S.E.2d at 326. To suggest that the tolling provisions are not applicable to an MPLA claim brought by a personal representative following death is simply not tenable.

CMO suggests the Legislature's failure to include a provision within the MPLA that specifically addresses the tolling of the limitations period for incompetent persons when it specifically addressed a tolling period for minors[22] is evidence that the tolling provisions of the savings statute do not apply. We disagree. The fact that the Legislature chose to address how the two-year MPLA limitations period impacts a certain class of minors does not establish an intent to nullify the effect of the savings statute on medical injuries suffered by incompetent persons. By failing to carve out any treatment different than that already existing with regard to the limitations periods applicable to causes of action brought on behalf of incompetent persons, it arguably does the opposite. All MPLA actions brought by a personal representative following an incompetent individual's death necessarily are instituted under authority of West Virginia Code § 55-7-8a(c). And, as addressed above, a

---

[22]The MPLA provides that a "cause of action for injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whichever provides the longer period." W.Va. Code § 55-7B-4(b).

15

personal representative's authority to bring suit following the death of an incompetent individual is expressly linked to the tolling provisions provided under the savings statute.[23] *See Hilltop Healthcare*, 226 W.Va. at 266, 700 S.E.2d at 326.

As the foregoing analysis makes clear, there is simply no basis for finding that the tolling provisions of the savings statute do not apply to MPLA actions that are instituted by a personal representative following the death of an incompetent individual.[24] The authority of a personal representative to bring a personal injury action on behalf of a deceased individual pursuant to West Virginia Code § 55-7-8a(c) includes the authority to bring a medical malpractice action under the MPLA for injuries sustained prior to death that did not result in death. Because West Virginia Code § 55-7-8a(c) incorporates the general disability savings statute, the tolling provisions of the general disability savings statute apply to a medical malpractice cause of action brought by a personal representative under authority of West Virginia Code § 55-7-8a.[25] Given that the applicable tolling provisions terminate upon

---

[23]*See supra* note 20.

[24]We observe, however, that as in cases like *Martin*, where the incompetent person has a duly appointed legal representative who is aware of an alleged act of medical malpractice, it would be prudent to promptly initiate the claim rather than waiting until after the incompetent person's death. Otherwise, it is likely that issues based on staleness and faded memories may negatively impact such claims.

[25]Because Mrs. Martin filed her MPLA cause of action during her husband's lifetime, the provisions of West Virginia Code § 55-7-8a were not relied upon to institute suit. As a result, the tolling provisions of West Virginia Code § 55-2-15 were not automatically invoked by operation of the statute. *See* W.Va. Code § 55-7-8a(c).

the death of an incompetent individual, the two-year statute of limitations begins to run on the date of the injured person's death. *See Hilltop Healthcare*, 226 W.Va. at 259, 700 S.E.2d at 319, syl. pt. 5.

In this case, the cause of action was timely filed within two years of Mr. Thompson's death. However, the trial court constrictively applied the limitations period to prevent the petitioner from introducing evidence related to a two-year period of time when Mr. Thompson was actually alive and susceptible to injury. By its ruling, the trial court effectively shortened the legislative grant of a two-year period in which to seek recovery for injuries that were sustained. Obviously, no personal injuries were sustainable beyond the point of death. As a result, the trial court erred in limiting the petitioner to introducing evidence for the two-year-period directly preceding the filing of her suit. Accordingly, this matter is reversed and remanded solely on the issue of the personal injury claim and the trial court is directed to permit the introduction of admissible evidence for the two-year period that preceded Mr. Thompson's death.

Given our determination of reversible error, we do not address the petitioner's allegations of error with regard to the demonstrative survey evidence,[26] observing only that

---

[26]The survey evidence was comprised of state inspections performed at the nursing facility.

17

it will now presumably fall within the time period for which evidence may be introduced that is relevant to the petitioner's MPLA claim.[27]  Based on the remand of this matter, we find no need to address the alleged error as to testimonial evidence provided by Dr. DeLaGarza.[28]

## IV.  Conclusion

Based on the foregoing, the order of the Circuit Court of Nicholas County denying a new trial to the petitioner is affirmed as to the wrongful death claim; reversed as to the personal injury claim; and this matter is remanded for a new trial solely on the personal injury claim.

> Affirmed, in part; reversed, in part; and remanded.

---

[27]We make no ruling as to the admissibility of the survey evidence.

[28]The petitioner argued that the expert witness was wrongly permitted to testify about the falls of other patients and to testify, without proper foundation, about a restraint device called a Posey Vest.