IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2023 Term

FILED

November 8, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0202
_____

BARBARA STINE TRIVETT, ADMINISTRATRIX OF THE ESTATE OF
JASPER TRIVETT,
Plaintiff Below, Petitioner,

v.

SUMMERS COUNTY COMMISSION d/b/a SUMMERS COUNTY OFFICE
OF EMERGENCY MANAGEMENT and CARMEN CALES,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Summers County
The Honorable Robert A. Irons, Judge
Civil Action No. 21-C-27

AFFIRMED, IN PART, REVERSED, IN PART,
AND REMANDED WITH DIRECTIONS
_____

Submitted: September 6, 2023
Filed: November 8, 2023

John J. Mize, Esq.                        Drannon L. Adkins, Esq.
MIZE LAW FIRM, PLLC                        Wendy E. Greve, Esq.
Beckley, West Virginia                    Pullin, Fowler, Flanagan, Brown
Counsel for the Petitioner                    & Poe, PLLC
                                          Charleston, West Virginia
                                          Counsel for the Respondents

JUSTICE WOOTON delivered the Opinion of the Court.
JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file
a separate opinion.

JUSTICE HUTCHISON concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.       "'"""The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).' Syl. Pt. 2, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)." Syl. Pt. 2, *Judy v. E. W. Va. Cmty. & Tech. Coll.*, 246 W. Va. 483, 874 S.E.2d 285 (2022).

2.       "'"""Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syllabus Point 1, *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018).' Syl. Pt. 1, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)." Syl. Pt. 1, *Judy v. E. W. Virginia Cmty. & Tech. Coll.*, 246 W. Va. 483, 874 S.E.2d 285 (2022).

3.       "W. Va. Code, 29-12A-6 (1986), violates the Equal Protection Clause found in Section X of Article III of the West Virginia Constitution to the extent that it denies to minors the benefit of the statute of limitations provided in the general tolling statute, W.

Va. Code, 55-2-15 (1923)." Syl. Pt. 3, *Whitlow v. Bd. of Educ. of Kanawha Co.*, 190 W. Va. 223, 438 S.E.2d 15 (1993).

4.      "'It is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)." Syl. Pt. 2, *Conseco Fin. Servicing Corp. v. Myers*, 211 W. Va. 631, 567 S.E.2d 641 (2002).

5.      The minority tolling provision set forth in the Governmental Tort Claims and Insurance Reform Act, West Virginia Code section 29-12A-6(b) (2023), does not extend to the executor or administrator of a deceased child's estate in a lawsuit brought on behalf of a child who was under the age of ten at the time of his or her death.

6.      "The Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 to -12, applies only when two conditions are satisfied, that is, when a plaintiff (1) sues a "health care provider" or "health care facility" for (2) "medical professional liability" as those terms are defined under the Act. These are separate and distinct conditions. If either of these two conditions is lacking, the Act does not apply." Syl. Pt. 5*, State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, 889 S.E.2d 44 (2023).

7.　　　　"The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition to its application." Syl. Pt. 2, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

8.　　　　"A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through

five will generally involve questions of material fact that will need to be resolved by the trier of fact. Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009).

9.      "'In a wrongful death action, under the discovery rule, the statute of limitation contained in W. Va. Code, 55-7-6(d) [(1992)] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death.' Syllabus point 8, *Bradshaw v. Soulsby,* 210 W.Va. 682, 558 S.E.2d 681 (2001)." Syl. Pt. 4, *Mack-Evans v. Hilltop Healthcare Ctr., Inc.*, 226 W. Va. 257, 700 S.E.2d 317 (2010).

**WOOTON, Justice:**

This appeal presents intertwined questions as to which of several possible statutes of limitation applies in a wrongful death action brought by the petitioner, Barbara Stine Trivett ("the petitioner"), administratrix of the estate of the decedent, Jasper Trivitt ("baby Jasper"), where baby Jasper was under the age of ten at the time of his death and the respondents, Summers County Commission d/b/a Summers County Office of Emergency Management ("respondent Emergency Management" or "911") and its employee Carmen Cales ("respondent Cales"), are governmental entities; and under what circumstances those statutes, if applicable, may be tolled. The circuit court granted the respondents' motion to dismiss the complaint on the ground that the petitioner's complaint had not been timely filed. Specifically, the court held that the two-year statute of limitations contained in the Governmental Tort Claims and Insurance Reform Act ("the Tort Claims Act" or "the Act"), West Virginia Code section 29-12A-6(a) (2023), applied to the petitioner's claims, and that the statute of limitations was not tolled by either the minority tolling provision contained in the Act, West Virginia Code section 29-12A-6(b), or the discovery rule as explicated in this Court's precedents.

Based on our review of the parties' briefs and oral arguments, the applicable law, the appendix record, and all other matters before this Court, we affirm, in part, reverse, in part, and remand for further proceedings consistent with this opinion.

1

## I. Facts and Procedural Background

On September 15, 2019, at approximately 4:18 a.m., the petitioner found her five-week-old son, Baby Jasper, unresponsive. The petitioner immediately called respondent Emergency Management on its 911 line and was connected to respondent Cales. After the petitioner had described the situation, and while still on the phone with her, respondent Cales made two unsuccessful attempts to contact Emergency Medical Services ("EMS"), the first attempt taking place at 4:19 a.m. and the second at 4:20 a.m. At this point, the petitioner requested instructions on how to perform cardiopulmonary resuscitation ("CPR") on baby Jasper, a request which respondent Cales declined, stating that "we do not give directions" on how to perform CPR.[1] The petitioner then asked

---

[1] We note that West Virginia Code section 24-6-5 (Supp. 2023) was amended, effective July 5, 2020, to require in relevant part:

> (e) As a condition of continued employment, persons employed to dispatch emergency calls in county emergency dispatch centers shall successfully complete:
>
> . . . .
>
> (2) A nationally recognized training course in emergency cardiovascular care for telephonic cardiopulmonary resuscitation selected by the medical director of an emergency medical dispatch center. This training course shall incorporate protocols for out-of-hospital cardiac arrest and compression-only cardiopulmonary resuscitation and continuing education, as appropriate.

whether she should transport baby Jasper to Summers County Hospital on her own, and respondent Cales instructed her to do so.

The petitioner and her husband immediately set out on a frantic trip to the hospital, with Mr. Trivett driving the car and the petitioner attempting to perform CPR on baby Jasper. By the time they arrived at the hospital baby Jasper had been deprived of oxygen for at least nine minutes, and although he was revived at the hospital and flown to Ruby Memorial Hospital, he died on September 17, 2019, two days later.

Approximately one week after baby Jasper's death, the petitioner, through counsel, filed a Freedom of Information Act[2] request for the 911 audio from September 15, 2019.[3] The audiotape, which was received by counsel on October 14, 2019, revealed that respondent Cales had reached EMS on her third attempt, some seventeen seconds after

Because this requirement was not in effect at the time of the tragic events in this case, the petitioner does not rely upon the statute as support for her claims relating to respondent Cales' refusal to provide CPR instruction. Rather, the petitioner's complaint referred to her expert's opinion, contained in the screening certificate of merit, that respondent Cales' refusal violated a national standard of care for 911 operators.

[2] *See* W. Va. Code §§ 29B-1-1 to -7 (2023) (statutory scheme pertaining to Freedom of Information requests).

[3] Although the petitioner explains in her brief the events that prompted her to retain counsel and file her FOIA request, this information is not contained in any testimony or evidence before the circuit court and we therefore do not consider it in deciding the issues presented on appeal.

disconnecting from the petitioner. Respondent Cales spoke to ambulance driver Jacob Woodrum, who asked for the petitioner's address so that an ambulance could be dispatched. However, respondent Cales did not provide it, identifying only the general area in which the petitioner lived and instructing Mr. Woodrum that because the petitioner was transporting baby Jasper to the hospital, it wasn't necessary to dispatch an ambulance.

On September 10, 2021, the petitioner served notice of a wrongful death claim, together with a screening certificate of merit and an affidavit, on both respondents, as well as on EMS and Mr. Woodrum, who are party defendants in the underlying case but not parties to this appeal. Thereafter, on October 12, 2021, she filed her complaint in the Circuit Court of Summers County. The respondents filed a motion to dismiss on the ground, inter alia, that the complaint had been filed after the statute of limitations had run. Following briefing and oral argument, the circuit court granted the motion, ruling that the petitioner's claims against the respondents are governed by the Governmental Tort Claims and Insurance Reform Act, West Virginia Code sections 29-12A-1 to -18 (2023), wherein the general statute of limitation set forth in subsection 29-12A-6(a) provides, inter alia, that "[a]n action against a political subdivision to recover damages for injury, death, or loss to a minor . . . shall be commenced within two years after the cause of action arose or after the injury, death or loss was discovered or reasonably should have been discovered." The circuit court rejected the petitioner's argument that her case did not fall within this general two-year limitation, but rather fell within the minority tolling provision in section 29-12A-

4

6(b): where suit is brought "by or on behalf of a minor who was under the age of ten years at the time of such injury, suit shall be commenced within two years after the cause of action arose . . . or prior to the minor's twelfth birthday, whichever provides the longer period." The basis for the court's ruling was its finding that "[b]ased upon a plain reading of the statute, the [c]ourt cannot conclude that the [minority tolling provision] applies here, as Jasper regrettably will not have a twelfth birthday. Because Jasper passed before his twelfth birthday, no such birthday exists in the future to maintain the saving provision's applicability."

The circuit court also rejected the petitioner's alternative argument that the two-year statute of limitations was tolled by the discovery rule. Specifically, the petitioner claimed that she did not learn the respondents had been negligent until she received the 911 tape and discovered for the first time that respondent Cales had actually reached Mr. Woodrum and instructed him not to dispatch an ambulance. In this regard, the court held that "[w]hile the contents of that conversation may have provided the [petitioner] with a legal basis for this action, she nevertheless became aware of the factual basis on September 17, 2019. That moment [baby Jasper's death] triggered the statute of limitations."

This appeal followed.

## II. Standard of Review

It is well established in this Court's jurisprudence that

> ""'"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).' Syl. Pt. 2, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)."

*Syl. Pt. 2, Judy v. E. W. Va. Cmty. & Tech. Coll.*, 246 W. Va. 483, 874 S.E.2d 285 (2022).

On appeal, we apply a similarly stringent standard of review:

> ""'"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*' Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syllabus Point 1, *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018).' Syl. Pt. 1, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)."

246 W. Va. at 484, 874 S.E.2d at 286, Syl. Pt. 1. With these standards in mind, we turn to the parties' arguments.

## III. Discussion

The petitioner has consistently alleged that her claims against the respondents fall within the Tort Claims Act, West Virginia Code sections 29-12A-1 to -18, which provides, in relevant part:

(c)     Subject to sections five and six of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

. . . .

(2)     Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

*Id.* § 29-12A-4(c)(2). The circuit court agreed, noting that the respondents "do not appear to dispute [the Act's] applicability."[4] We leave that legal conclusion undisturbed, for the reasons discussed *infra*: the argument here is not whether the Act applies – as it indisputably does – but what statute of limitations controls: 1) the minority tolling provision in the Tort Claims Act, which applies in a case involving "injuries, death, or loss"[5] sustained by a child under the age of ten; 2) the tolling provision in the Medical Professional Liability Act ("MPLA"), West Virginia Code sections 55-7B-1 to -12 (2016 & Supp. 2023); or 3) the statute of limitations contained in our wrongful death statute, West

---

[4] The respondents' position is a nuanced one: although they do not directly contest that the petitioner's claims fall within the Act, inasmuch as the Act contains the immunity provisions they seek to invoke, they contend that nonetheless the statute of limitations for any claim involving a death should be that contained in the wrongful death statute, West Virginia Code section 55-7-6(d) (2016).

[5] *See* text *infra*.

Virginia Code section 55-7-5 (2023). Further, regardless of which statute of limitations governs this case, there is also a question regarding whether the discovery rule applies.

**A.**

Under the Tort Claims Act, the general statute of limitations for an action for damages arising from "injury, death, or loss" to persons or property is that it "shall be brought within two years after the cause of action arose or after the injury, death or loss was discovered or reasonably should have been discovered, whichever last occurs or within any applicable shorter period of time for bringing the action provided by this code." *Id*. § 29-12A-6(a). However, the Act contains a minority tolling provision:

> An action against a political subdivision to recover damages for injury, death, or loss to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years after the cause of action arose or after the injury, death or loss was discovered or reasonably should have been discovered, whichever last occurs, or prior to the minor's twelfth birthday, whichever provides the longer period.

*Id*. § 29-12A-6. The petitioner's primary argument, both below and on appeal, is that pursuant to section 29-12A-6(b), the statute of limitations in the instant case did not run until August 9, 2031, which would have been baby Jasper's twelfth birthday. In response, the respondents contend that the minority tolling provision in the Act does not apply in this case because baby Jasper, having tragically died as an infant, will never have a twelfth birthday. The circuit court agreed with the respondents that the Act's minority tolling

8

provision does not apply here: "Because Jasper passed before his twelfth birthday, no such birthday exists in the future to maintain the saving provision's applicability."

## 1.

Before we delve into the merits of the petitioner's argument, we must consider the respondents' contention that this issue is moot because this Court held section 6(b) of the Act to be facially unconstitutional in *Whitlow v. Bd. of Educ. of Kanawha Co.*, 190 W. Va. 223, 438 S.E.2d 15 (1993). In *Whitlow*, the defendant Board of Education contended that the timeliness of a minor's claim for damages was governed by section 29-12A-6(b) of the Tort Claims Act rather than by the general savings statute, West Virginia Code section 55-2-15(b) (Supp. 2023), which provides that

> [i]f any person to whom the right accrues to bring any personal action other than an action described in subsection (a) of this section, suit, or scire facias, or any bill to repeal a grant, shall be, at the time the same accrues, an infant or insane, the same may be brought within the like number of years after his or her becoming of full age or sane that is allowed to a person having no such impediment to bring the same after the right accrues, or after such acknowledgment as is mentioned in § 55-2-8 of this this code, except that it shall in no case be brought after 20 years from the time when the right accrues.

This Court disagreed, holding in syllabus point three that "W. Va. Code, 29-12A-6 (1986), violates the Equal Protection Clause found in Section X of Article III of the West Virginia Constitution to the extent that it denies to minors the benefit of the statute of limitations

provided in the general saving statute, W. Va. Code, 55-2-15 (1923)." *Whitlow*, 190 W. Va. at 225, 438 S.E.2d at 17, Syl. Pt. 3. In short, we found section 29-12A-6(d) of the Tort Claims Act to be unconstitutional only as applied in a case where its application would *shorten* the applicable statute of limitations for a minor in a suit against a governmental tortfeasor.

In the instant case it is beyond argument that the "person to whom the right accrues to bring any personal action described in subsection (a) of [the general saving statute]" is baby Jasper's personal representative – here, his mother – not baby Jasper himself. *See*, *e.g.*, *McDavid v. United States*, 213 W. Va. 592, 598, 584 S.E.2d 226, 232 (2003) ("The wrongful death action 'shall be brought by and in the name of the personal representative of such deceased person[.]'"). This is so because the "purpose of the wrongful death act is to compensate the beneficiaries for the loss they have suffered as a result of the decedent's death." *White v. Gosiene,* 187 W.Va. 576, 582, 420 S.E.2d 567, 573 (1992). Accordingly, because our general saving statute does not apply to the claims in this case, the result of applying section 29-12A-6(b) of the Tort Claims Act could only be to *lengthen* any statute of limitations that might otherwise apply. Thus, our decision in *Whitlow* does not render the petitioner's argument moot.

**2.**

The petitioner contends that under what she characterizes as the plain language of the Act's tolling provision, any action for damages resulting from "injury, *death* or loss" to a minor must be commenced "within two years after the cause of action arose or after the injury, *death* or loss was discovered or reasonably should have been discovered, whichever last occurs, or prior to the minor's twelfth birthday, whichever provides the longer period." *Id*. (emphasis added). In this regard, the petitioner argues that "August 9 will always remain baby Jasper's birthday, even though he has passed[,]"and that any finding to the contrary would violate our longstanding rule that "[i]t is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 4, *State v. Ward*, 245 W. Va. 157, 858 S.E.2d 207 (2021) (citation omitted).

We disagree. First, although the inclusion of the words "injury, death or loss" in the statutory language seemingly provides support for the petitioner's argument, our analysis is aligned with that of the New Mexico Supreme Court, which held in *Regents of University of New Mexico v. Armijo*, 704 P.2d 428 (N.M. 1985), that

> [i]n reversing the trial court, the Court of Appeals reasoned that the minority exception in the statute applied to the infant's cause of action and that this exception allowed the personal representative to file suit on the infant's behalf any time prior to the date on which the child would have been nine years of age, had he lived. The Court of Appeals determined that

11

> because the minority exception to the statute immediately follows the clause "injury or death," the exception is equally applicable to either occurrence. The Court of Appeals cited the plain meaning rule of construction as supporting its interpretation. We disagree with this interpretation.

*Id*. at 429. The court explained that the very nature of minority tolling provisions militates against their application in a case involving a deceased minor, because such clauses

> are enacted to allow time for the full scope of a child's injury to become apparent, to enable the child to become competent to testify, or to allow the child to act for himself after the disability has been removed[.] . . . Clearly, none these reasons are applicable when the minor dies.

*Id*. at 430 (citation omitted). Thus, application of a minority tolling provision in what is, in practical effect, a wrongful death action would lead to an absurd result: a lengthy extension of time for bringing suit which confers no benefit on the minor, who is deceased, all while keeping putative defendants "under the gun" and then requiring them years later to defend against stale claims.[6] *Cf. Williams v. CMO Mgmt., LLC*, 239 W. Va. 530, 537, 803 S.E.2d 500, 507 (2016) ("Logic impels the conclusion that an incompetent individual's death is a natural moratorium for the tolling of the statute of limitations that was invoked due to a disability.").

---

[6] We have held that the purpose of a statute of limitations is "to prevent stale claims and enable the defendant to preserve evidence." *Hupp v. Monahan*, 245 W. Va. 263, 270, 858 S.E.2d 888, 895 (2021).

It is well established in our law that

>  "'[i]t is the duty of a court to construe a statute according to its true intent, and give to it such construction as will uphold the law and further justice. It is as well the duty of a court to disregard a construction, though apparently warranted by the literal sense of the words in a statute, when such construction would lead to injustice and absurdity.' Syllabus Point 2, *Click v. Click,* 98 W.Va. 419, 127 S.E. 194 (1925)."

Syl. Pt. 2, *Conseco Fin. Servicing Corp. v. Myers*, 211 W. Va. 631, 567 S.E.2d 641 (2002). We conclude that here, although the inclusion of the words "injury, death or loss" in West Virginia Code section 29-12A-6(b) could warrant the construction urged by the petitioner – that the minority tolling provision applies even though the minor is deceased – this Court will disregard said construction because it would lead to an absurd result surely not intended by the Legislature. *See Conseco,* 211 W. Va. at 633, 567 S.E.2d at 643.

Second, the petitioner's reading of the statute would require us to do exactly what is forbidden under *Ward*: changing the words "prior to the minor's twelfth birthday" to "prior to *what would have been* the minor's twelfth birthday." *See Ward*, 245 W. Va. at 157, 858 S.E.2d at 208, Syl. Pt. 4. In this regard, while August 9 will always be the anniversary of baby Jasper's birth, "we are not persuaded that 'birthday,' as used in the statute, expresses a clear legislative intent to provide a cutoff for the assertion of legal rights based on the 'anniversary' of a deceased minor's birth." *Vance v. Henry Ford Health Sys.*, 726 N.W.2d 78, 82 (Mich. Ct. App. 2006); *see also Dachs v. Hendrix*, 354 S.W.3d 95, 100

13

(Ark. 2009) ("The tragic reality of this case is that Elizabeth Dachs was stillborn and will not have an eleventh birthday.").

Contrary to the petitioner's assertion, we cannot conclude that the words "prior to *what would have been* the minor's twelfth birthday" are necessarily "implied in [section 29-12A-6(b)] or must be included in it in order to make the terms actually used have effect[.]" *Vanderpool v. Hunt*, 241 W. Va. 254, 262, 823 S.E.2d 526, 534 (2019) (citation omitted). As the Wisconsin Court of Appeals held in *Awve v. Physicians Insurance Company of Wisconsin, Inc.*, 512 N.W.2d 216 (Wis. Ct. App. 1994),

> to reach the age of ten years, a minor must be living. If the legislature had wanted this language to mean 'ten years after that person's birth,' it could have added the phrase 'by the time the minor reaches or *would have reached*' the age of ten years. The interpretation the parents suggest is not reasonable given the plain meaning of the statutory language.

*Id*. at 218-19 (emphasis added).

Third, as noted by one commentator,[7] "[c]ase law overwhelmingly supports defendants on the issue of whether a minority tolling provision extends to administrators of a deceased minor's estate,"[8] and indeed, the petitioner has not cited any authority to the

---

[7] *See* Gretchen R. Fuhr, *Civil Procedure/Tort Law – Better Off Dead?: Minority Tolling Provision Cannot Save Deceased Child's Claim*, 31 W. New Eng. L. R. 103, 115 (2009). Although Ms. Fuhr advocates adoption of the petitioner's position in the instant case, she does not cite any authority supporting her position and our research discloses none either prior to or subsequent to the article's publication.

[8] It has been held that a minority tolling provision *does* apply where a minor brings suit on behalf of his deceased parent. *See DeKalb Med. Ctr., Inc. v. Hawkins*, 655 S.E.2d

14

contrary in her brief or oral argument. *See*, *e.g.*, *Monk v. Kennedy Univ. Hosp., Inc.*, 279 A.3d 456, 461-62 (N.J. Super. Ct. App. Div. 2022) ("Furthermore, the concept of minority tolling has no logical application to a decedent's claims, even where the decedent was a minor when he or she passed away. The purpose of minority tolling is to preserve claims until the minor achieves sufficient maturity to be held accountable for the assertion of legal rights, a circumstance that ceases to exist once a minor dies. The extent of damages resulting from alleged negligence is often unknowable for minors, whose mental, physical, and emotional growth may continue for years after the incident giving rise to the claim. In contrast, the extent of damages resulting from negligence is fully ripe and quantifiable in a decedent."); *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 133 (Tex. App. 2020) ("Further, although Abygail Harris was a minor at the time of the automobile accident when she sustained her fatal injuries and died, once she died, she ceased to be a minor, and the tolling provisions of § 16.001 ceased to apply."); *Dachs*, 354 S.W.3d at 100 ("The tragic reality of this case is that Elizabeth Dachs was stillborn and will not have an eleventh birthday. Therefore, giving the words of this statute their ordinary and usually accepted meaning in common language, as we are required to do, we conclude that her representative had until two years from the alleged malpractice occurring on September 1, 2004, to commence suit on her behalf."); *Runstrom v. Allen*, 191 P.3d 410, 413 (Mont. 2008) ("After

---

823, 828 (Ga. Ct. App. 2008) ("we conclude that the minority tolling provision of OCGA § 9-3-90(a) applies to a wrongful death action brought by a minor for the death of a parent when the action is not based upon medical malpractice.").

Richard's death, Ed – as the personal representative of Richard's estate – was the 'person entitled to bring' the survival claim. *See* § 27-2-401(1), MCA. It is undisputed that Ed was not a minor when the cause of action accrued, and he was not – and could not have been – a minor when he filed the survival action. *See* § 72-3-501(1), MCA. Based on the plain language of § 27-2-401(1), MCA, we conclude minority tolling does not apply to the time after Richard's death, when Ed – not Richard – was the 'person entitled to bring' the survival action."); *Randolph v. Methodist Hosps., Inc.*, 793 N.E.2d 231, 236 (Ind. Ct. App. 2003) ("The purpose of the [medical malpractice] act was to provide health care providers with some protection from malpractice claims in order to preserve the availability of medical services for the public health and well-being. . . . Interpreting the statute of limitations exception for minors to include deceased minors would expand liability for health care providers, and would not be consistent with the goals of the Medical Malpractice Act."); *Holt v. Lenko*, 791 A.2d 1212, 1214 (Pa. Super. Ct. 2002) ("Construing the minority tolling statute in accordance with the plain meaning of its language, and the intent of the legislature, we conclude that the statute contemplates a minor plaintiff who is alive, but whose parent or guardian fails, for some reason, to bring suit on the minor's behalf prior to the minor's eighteenth birthday. There is nothing in the statutory language that would indicate that the legislature intended that the minority tolling statute would be available to a deceased minor plaintiff."); *Awve,* 512 N.W.2d at 218-19 ("We hold that the relevant language in sec. 893.56, Stats., 'by the time that person reaches the age of 10 years,' is unambiguous. This is because to reach the age of ten years, a minor must be

living. If the legislature had wanted this language to mean 'ten years after that person's birth,' it could have added the phrase 'by the time the minor reaches or *would have reached*' the age of ten years. The interpretation the parents suggest is not reasonable given the plain meaning of this statutory language."); *Bailey v. Martz*, 488 N.E.2d 716, 722 (Ind. Ct. App. 1986) ("had Mark lived, running of the applicable statute of limitations would have been tolled until July 28, 1982, his 18th birthday. Because Mark did not live, however, his right to recover damages . . . was a chose in action which passed on his death to his personal representative."); *Armijo*, 704 P.2d at 430 ("Minority savings clauses are enacted to allow time for the full scope of a child's injury to become apparent, to enable the child to become competent to testify, or to allow the child to act for himself after the disability has been removed[.] Clearly, none of these reasons are applicable when the minor dies. In fact, death usually terminates a legal disability. . . . When the term of minority ends either by the death of the minor or by the minor attaining the specified age, so too must end the applicability of the minority savings clause of [the statute] and the statute commences to run at that time.") (citations omitted)).

In summary, we find that the petitioner's arguments are not supported by principles of statutory construction, are not supported by any of the rationales underlying the application of minority tolling provisions in non-death cases, and are not supported by any case law in this State or in any other jurisdiction. In view of the foregoing, we hold that the minority tolling provision set forth in the Governmental Tort Claims and Insurance Reform Act, West Virginia Code section 29-12A-6(b) (2023), does not extend to the

17

executor or administrator of a deceased child's estate in a lawsuit brought on behalf of a child who was under the age of ten at the time of his or her death.

**B.**

The petitioner argues that even if the minority tolling provision of the Tort Claims Act does not apply in this case, the statute of limitations on her claims is nonetheless tolled pursuant to the MPLA, West Virginia Code section 55-7B-6(i)(1).[9] In this regard, the petitioner asserts that her claims can be construed as falling within the MPLA for either or both of two reasons. First, she argues that the services which should have been, but were not, performed or furnished by the respondents fall within the MPLA's definition of "health care":

> Any act, service, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider or person supervised by or acting under the direction of a health care provider or licensed professional for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, including, but not limited to, staffing, *medical transport*, custodial care, or basic care, infection control, positioning, hydration, nutrition, and similar patient services[.]

*Id*. § 55-7B-2(e)(2) (emphasis added). Once again, we acknowledge that this argument has some surface appeal, inasmuch as this Court has expansively read the statute, determining that

---

[9] It is undisputed that if the petitioner's claims against these respondents fall within the MPLA, the complaint was timely filed.

when a complaint contains a cause of action that meets the definition of 'heath care' under West Virginia Code section 55-7B-2(e), claims that are either 'related to' or 'contemporaneous to' the medical injury being asserted, 'all in the context of rendering health care services,' meet the definition, and are encompassed in 'medical professional liability' as it is defined in West Virginia Code section 55-7B-2(i). The 'health care' claim is the 'anchor;' it gets you in the door of MPLA application to allow for inclusion of claims that are 'contemporaneous to or related to' that claim, but still must be in the overall context of rendering health care services. To put a finer point on it, you must have the anchor claim (fitting the definition of 'health care') and then make the showing that the ancillary claims are (1) contemporaneous with or related to that anchor claim; and (2) despite being ancillary, are still in the context of rendering health care.

*State ex rel. W. Va. Univ. Hosp., Inc. v. Scott*, 246 W. Va. 184, 194, 866 S.E.2d 350, 360 (2021) (footnote omitted). In the instant case, the petitioner's expert opined that had an ambulance been dispatched to intercept the petitioner on her way to the hospital, this earlier medical intervention would, at a minimum, have given baby Jasper a chance of survival greater than twenty-five percent. Thus, the petitioner claims, the respondents' decision to forego sending an ambulance fell squarely within the definition of health care, *id*. § 55-7B-2(e)(2), or could be fairly deemed to be "contemporaneous with or related to" the failure to provide health care. *Id*.; *see Scott*, 246 W. Va. at 194, 866 S.E.2d at 360.

The problem with the petitioner's argument is that whether or not the respondents' failure to dispatch an ambulance can be deemed to fall within the ambit of "act[s], service[s], or treatment[s]" constituting "health care" or can be fairly characterized as "health care adjacent," *see* text *supra*, neither respondent is a "health care provider or person supervised by or acting under the direction of a health care provider or licensed

19

professional[,]" as required by the statute. W. Va. Code § 55-7B-2(e)(2).[10] In this regard,

the MPLA defines a health care provider as

> a person, partnership, corporation, professional limited
> liability company, health care facility, entity, or institution
> *licensed by, or certified in, this state or another state, to*
> *provide health care or professional health care services,*
> including, but not limited to, a physician, osteopathic
> physician, physician assistant, advanced practice registered
> nurse, hospital, health care facility, dentist, registered or
> licensed practical nurse, optometrist, podiatrist, chiropractor,
> physical therapist, speech-language pathologist, audiologist,
> occupational therapist, psychologist, pharmacist, technician,
> certified nursing assistant, emergency medical service
> personnel, emergency medical services authority or agency,
> any person supervised by or acting under the direction of a
> licensed professional, any person taking actions or providing
> service or treatment pursuant to or in furtherance of a
> physician's plan of care, a health care facility's plan of care,
> medical diagnosis or treatment; or an officer, employee, or
> agent of a health care provider acting in the course and scope
> of the officer's, employee's or agent's employment.

*Id*. § 55-7B-2(g) (emphasis added).

Our research discloses that West Virginia law does not require licensure or

certification of a county's enhanced emergency telephone system; rather, the relevant

statute, West Virginia Code section 24-6-5 (Supp. 2023), sets forth the basic requirements

for such a system, requires the director of each county emergency dispatch center to

develop "policies and procedures to establish a protocol for dispatching emergency medical

---

[10] Because the hospital in *Scott* was unquestionably a health care provider, this
requirement was not discussed in the Court's opinion.

calls implementing a nationally recognized emergency medical dispatch program or an emergency medical dispatch program approved by the Office of Emergency Medical Services ("OEMS")[,]"[11] and provides that "a county commission or the West Virginia State Police shall seek the advice of both the telephone companies providing local exchange service within the county and the local emergency providers." *Id*. § 24-5-5(c). Similarly, at the time of the events at issue in this case, persons employed as dispatchers were required to complete both a forty-hour nationally recognized training course within one year of their employment and an additional nationally recognized emergency medical dispatch course or an emergency medical dispatch course approved by the OEMS within three years of the statute's enactment or, if employed after July 1, 2013, within one year of employment. *Id*. § 24-6-5(e)(1) & (2).[12] Thus, in the instant case respondent Emergency Management Services was not a health care provider, and respondent Cales was not "supervised by or acting under the direction of" a health care provider.

The petitioner argues that even if the respondents are not "health care providers" under the MPLA, claims based on their failure to dispatch an ambulance are

---

[11] W. Va. Code § 24-6-5(f).

[12] In 2020, the statute was amended to require that dispatchers complete a "nationally recognized training course in emergency cardiovascular care for telephonic cardiopulmonary resuscitation selected by the medical director of an emergency medical dispatch center." *See supra* note 1.

nonetheless cognizable under the MPLA because they fall within the definition of "medical professional liability," which

> means any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient. It also means other claims that may be contemporaneous to or related to the alleged tort or breach of contract or otherwise provided, all in the context of rendering health care services.

W. Va. Code § 55-7B-2(i); *see also Scott*, 246 W. Va. at 193, 866 S.E.2d at 359 ("As stated above, 'medical professional liability' no longer encompasses *only health care services rendered or that should have been rendered*. It also includes 'other claims *that may be contemporaneous to or related to* the alleged tort or breach of contract or otherwise provided, *all in the context of rendering health care services.*'").

Again, the petitioner's argument has surface appeal because under both the statute and this Court's reasoning in *Scott*, it is fair to characterize the respondents' alleged failure to dispatch an ambulance as an act or omission falling within the definition of "medical professional liability." However, this Court has unequivocally held that this is not sufficient to bring a case within the ambit of the MPLA, because

> [t]he Medical Professional Liability Act, W. Va. Code §§ 55-7B-1 to -12, applies only when two conditions are satisfied, that is, when a plaintiff (1) sues a "health care provider" or "health care facility" for (2) "medical professional liability" as those terms are defined under the Act. These are separate and distinct conditions. If either of these two conditions is lacking, the Act does not apply.

22

Syl. Pt. 5, *State ex rel. W. Va. Div. of Corr. & Rehab. v. Ferguson*, 248 W. Va. 471, 889

S.E.2d 44 (2023); *see also* Syl. Pt. 4, in part, *State ex rel. Charleston Area Med. Ctr., Inc.*

*v. Thompson*, 248 W. Va. 352, 888 S.E.2d 852 (2023) ("Where the alleged tortious acts or

omissions are committed *by a health care provider* within the context of the rendering of

'health care' as defined by W. Va. Code § 55-7B-2(e) (2006) (Supp. 2007), the [MPLA]

applies regardless of how the claims have been pled.") (emphasis added and citation

omitted). In this regard, we held in *Ferguson* that the West Virginia Division of Correction

& Rehabilitation ("WVDCR") could not be deemed a "health care provider" because

> DCR is not listed as a health care provider or health care
> facility under the MPLA nor does it fall within the ambit of any
> of the individuals or groups identified in the MPLA as health
> care providers or health care facilities. *See* W. Va. Code § 55-
> 7-2(f), (g). These omissions of DCR from the MPLA's
> definitions section establish that the Legislature did not mean
> to include DCR as a health care provider or health care facility.
> *See Phillips v. Larry's Drive-In Pharmacy, Inc.*, 220 W. Va.
> 484, 493, 647 S.E.2d 920, 929 (2007) ("We believe that there
> is no better definition of what constitutes the medical care
> community, and therefore what groups and individuals are
> included as 'health care provider[s]' under the MPLA, than the
> *unambiguous and exclusive list of defined providers in W. Va.*
> *Code, 55-7B-2(c) [now (g)]*.").

*Ferguson*, 248 W. Va. at __, 889 S.E.2d at 53 (emphasis added). We also noted that

extending the MPLA to include individuals or entities other than those specifically

designated by the Legislature would be inconsistent with the statute's purpose, which was

"to remedy what [the Legislature] perceived as a crisis in mounting lawsuits against

*professional* health care providers and health care facilities that led to difficulty in

23

procuring reasonable liability insurance for the *medical community*."[13] *Id*. (emphasis added).

In summary, we conclude that the petitioner's claims do not fall within the otherwise broad ambit of the MPLA[14] because no amount of linguistic acrobatics can turn these respondents, Summers County Commission d/b/a Summers County Office of Emergency Management and Carmen Cales, into "health care providers" as defined in West Virginia Code section 55-7B-2(g). *See Ferguson*, 248 W. Va. at __, 889 S.E.2d at 46, Syl. Pt. 5.

**C.**

---

[13] We note that the case of *Damron v. Primecare Medical of West Virginia, Inc.*, No. 20-0862, 2022 WL 2078178 (W. Va. June 9, 2022) (memorandum decision), is not to the contrary. In *Damron*, the defendant Primecare Medical was unquestionably a health care provider; the question before this Court was whether the inmate plaintiff could "plead himself out" of the MPLA – whose pre-suit requirements he had not met – by characterizing his cause of action as a claim of deliberate indifference rather than a claim of medical negligence. We held that he could not, because the fact that the alleged medical negligence occurred in a regional jail did not alter the essential nature of the claim. In contrast, the issue in *Ferguson* was whether the defendant WVDCR was a health care provider or a health care facility. Once this Court determined that it was not, then even if the plaintiff's cause of action could be characterized as one of medical negligence, that fact, standing alone, did not bring the claims within the ambit of the MPLA. *See Ferguson*, 248 W. Va. at ____, 889 S.E.2d at 46, Syl. Pt. 5.

[14] "While the reach of the MPLA may indeed be broad, it is not limitless." *Thompson*, 248 W. Va. at __, 888 S.E.2d at 866 (Wooton, J., dissenting).

Finally, we turn to the respondents' argument that even though the petitioner's claims are cognizable under the Tort Claims Act (absent its minority tolling provision discussed *supra*), it is this State's wrongful death statute, West Virginia Code section 55-7-6(d), which contains the applicable statute of limitations. In this regard, the respondents urge this Court to recognize what they deem to be the rationale of *Williams v. CMO Management*, LLC, 239 W. Va. 530, 803 S.E.2d 500 (2016), where we held that

> [t]he statute of limitations for a personal injury claim brought under the authority of W. Va. Code § 55-7-8a(c)(1959) (Repl. Vol. 2008) is tolled during the period of a mental disability as defined by W. Va. Code § 55-2-15 (1923) (Repl. Vol. 2008). In the event the injured person dies before the mental disability ends, the statute of limitations begins to run on the date of the injured person's death.

*Id*. at 530, 803 S.E.2d at 501, Syl. Pt. 3, in part; *see also State ex rel. Morgantown Operating Co., LLC v. Gaujot*, 245 W. Va. 415, 429, 859 S.E.2d 358, 372 (2021) (determining that "[a]fter thorough analysis, we are left with the same conclusion reached in *Miller [v. Romero,* 186 W. Va. 523, 413 S.E.2d 178 (1991, *overruled on other grounds by Bradshaw v. Soulsby*, 210 W. Va. 682, 558 S.E.2d 681 (2001)]* that the Legislature intended the Wrongful Death Act statute of limitations to apply to causes of action for death sounding in medical negligence, and the MPLA to apply to causes of action for personal injury sounding in medical negligence.).[15]

---

[15] *Morgantown Operating* was an action alleging that the decedent's death was the result of medical negligence on the part of the defendant nursing home. *Morgantown Operating Co.,* 245 W. Va. at 418, 859 S.E.2d at 361. The MPLA requires actions arising from the negligence of a nursing home to be brought within one year, whereas the wrongful

We find it unnecessary to resolve this issue in the instant case because it would not in any way affect our disposition of the matter; the Tort Claims Act and the wrongful death statute both contain a two-year statute of limitations, and neither contains a statutory prohibition to application of the discovery rule. *See* Syl. Pt. 2, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009) ("The 'discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition to its application."). Thus, we turn to the final, and dispositive, question in this case: whether the circuit court erred in holding that the discovery rule did not apply because the petitioner knew she hadn't been met by an ambulance while she was on her way to the hospital, and thus the statute of limitations was triggered the moment "[the petitioner] became aware of Jasper's passing."

This Court has held that the determination of whether the discovery rule applies to a statute of limitations requires a five-part inquiry by the trial judge:

> A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be

death statute requires actions arising from negligence on the part of any person or entity to be brought within two years. In 2022, the Legislature amended West Virginia Code section 55-7B-4(b) to clarify and codify its intent that the one-year statute of limitations for medical negligence claims against nursing homes applies both to claims for injuries and claims for death.

applied to determine when the statute of limitation began to run by determining *when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action*, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; *the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact*.

Syl. Pt. 5, *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255 (2009) (emphasis added); *see also E.K. v. W. Va. Dep't of Health*, No. 16-0773, 2017 WL 5153221, at *6-7 (W. Va. Nov. 7, 2017) (memorandum decision) ("Because statute of limitations issues are often fact-determinative, a circuit court should hesitate to dismiss a complaint on this ground based solely on the face of the complaint. *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C.Cir. 1996). 'A statute of limitations analysis is generally riddled with questions of fact which *the Defendants* must establish in order to bar Plaintiffs' claims. Because of this fact-intensive burden, affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6).' *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 353–54 (D. Vt. 2010) (footnote and citation omitted). Accordingly, '[u]nless the complaint alleges facts that create an ironclad defense, a

27

limitations argument must await factual development.' *Foss v. Bear, Stearns & Co., Inc.,* 394 F.3d 540, 542 (7th Cir. 2005).").

In the instant case, the circuit court failed to appreciate that although the petitioner knew she hadn't been met by an ambulance on her way to the hospital, she alleges that at the time of baby Jasper's death she did not know, and could not reasonably have known, *that these respondents had anything to do with it*. To the contrary, the petitioner alleges that at the time her telephone conversation with respondent Cales ended, respondent Cales had still not been able to reach EMS. In short, although the petitioner may have been aware of facts suggesting that ambulance driver Jacob Woodrum, an employee of EMS, had been negligent,[16] she was not aware of any facts suggesting that she had a claim of negligence against either respondent Emergency Management or respondent Cales. As we held in syllabus point four of *Mack-Evans v. Hilltop Healthcare Center, Inc.*, 226 W. Va. 257, 700 S.E.2d 317 (2010):

> "'In a wrongful death action, under the discovery rule, the statute of limitation contained in W. Va. Code, 55-7-6(d) [1992] begins to run when the decedent's representative knows or by the exercise of reasonable diligence should know (1) that the decedent has died; (2) that the death was the result of a wrongful act, neglect, or default; (3) the identity of the person or entity who owed the decedent a duty to act with due care and who may have engaged in conduct that breached that duty; and (4) *that the wrongful act, neglect or default of that person or entity has a causal relation to the decedent's death*.' Syllabus

---

[16] Defendant Woodrum has not alleged that the petitioner's claims against him are barred by any statute of limitations, and therefore this question is moot as to him.

28

point 8, *Bradshaw v. Soulsby,* 210 W.Va. 682, 558 S.E.2d 681 (2001)."

(Emphasis added).

On the record as it currently stands, there are unresolved questions of fact as to when the petitioner knew, or by the exercise of reasonable diligence should have known, that any acts or omissions on the part of the respondents had a causal relationship to the death of baby Jasper. We conclude that the circuit court erred in granting the respondents' Rule 12(b)(6) motion on the ground that the statute of limitations had run on the petitioner's claims; and accordingly, the court's dismissal order is reversed, and this case is remanded for further proceedings, including discovery proceedings, consistent with this opinion.

## IV. Conclusion

For the foregoing reasons, we affirm the circuit court's decision that the minority tolling provision of West Virginia Code section 29-12A-6(b) does not apply to this case; but we reverse the court's grant of the respondents' motion to dismiss and remand for further factual development of the respondents' statute of limitations defense and for such further proceedings deemed appropriate by the court.

Affirmed, in part;
Reversed in part; and
Remanded with Directions.